## No. 12,542.

### W. H. TRIBBETTE VS. L. C. GWIN ET ALS.

Suit having been commenced against several non-resident defendants by attach-ment and the garnishment of resident commission merchants, as stakeholders, a judgment pronounced against them upon traverse of their answers will be reversed if the evidence substantially shows that they have paid and satisfied the plaintiff's demand.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

---

*Bernard McCloskey* for Plaintiff, Appellee.

---

*J. G. Hawkes,* Curator *ad hoc* for absent Defendants, Appellees.

---

*Clegg & Quintero* for Garnishees, Appellants.

---

Argued and submitted December 31, 1897.
Opinion handed down January 24, 1898.
Opinion handed down refusing rehearing March 7, 1898.

Tribbette vs. Gwin et als.

The opinion of the court was delivered by

WATKINS, J.    This suit is directed against L. C. Gwin, E. C. Gwin and Samuel Gwin, and judgment is sought against them *in solido* for $2797.50, with interest and attorney's fees.

Coupled therewith is a writ of attachment and H. & C. Newman are made garnishers, and certain interrogatories propounded to them, and each and every one of them were answered in the negative.

Upon a rule duly taken the aforesaid answers were traversed, and upon the trial thereof a judgment was pronounced against the garnishees, as well as against the defendants, and from that judgment the garnishees have appealed.

The plaintiffs and defendants reside in the State of Mississippi, and the suit is brought upon a promissory note dated at Greenville, Mississippi, on the 14th of February, 1895,and payable at the First National Bank of Greenville, Mississippi, on the first of January after date; and its payment is secured by a deed of trust, whereby certain movable property was conveyed and warranted to J. Newgas, trustee, same being at the time situated on the Sago plantation, situated in the counties of Washington and Sharkey, in the State of Mississippi.

There was likewise conveyed and guaranteed to said trustee, " all cotton, cotton seed, corn and agricultural products which might be grown by (the makers of said note) or caused to be grown by them on said plantation, as well as all rents, issues and interests that they might have arising therefrom, growing out of said plantation, and any crops growing thereon during the year 1895," etc.

Petitioner alleges that for the security of the payment of said note and other indebtedness, he has by the law a lien, privilege and right of pledge upon all the cotton seed, corn, hay and other agricultural products produced upon said plantation, *wherever situated.*

He alleges that said garnishees have in their possession and under their control certain cotton, cotton seed and other agricultural products, and moneys realized from the sale thereof, and also other moneys, rights, credits and property belonging to said defendants, or in which they have an interest, and upon which his lien, privilege and right of pledge aforesaid rest.

That said garnishees had and have full knowledge of the existence of said trust deed, the recitals thereof, and of the aforesaid

trust estate, and the extent thereof, and that they have already paid him a portion thereof, which was secured thereby, but decline and refuse to pay the note sued on, which constitutes a part of same, notwithstanding payment has been demanded of them.

The interrogatories inquired of the garnishees whether or not they had in their possession, or under their control, any money, rights, credits, or other property of the defendants; and whether they were in any manner indebted to them—particularly inquiring of them as to their possession of any portion of the property covered by the trust deed, or the proceeds thereof.

To each of these interrogatories their answers were in the negative except to the last one, to which they made the following response, viz.:

That they had received and had on hand " one hundred and twenty bales of cotton, valued at about five thousand one hundred and fifty dollars, against which (the defendants) owe them six thousand six hundred and seventy-five dollars and eighty-eight cents.

Upon the traverse of the garnishees' answer, the facts pertinent to the transaction were fully developed, and the following excerpt from the brief of counsel for the garnishees may well preface the statement thereof, viz.:

" W. H. Tribbette, a resident of Mississippi, agreed to advance the Gwin Brothers a certain sum of money for the making of the crop on the Sago plantation. The indebtedness was represented by two notes secured by deed of trust.

The original deed of trust recognizes a debt of seventy-two hundred and forty-five ($7245) dollars. It was evidenced by two promissory notes of twenty-seven hundred and ninety-seven dollars and fifty cents each, and these notes were bearing ten per cent. interest; and the third note, due January 1, 1896, for sixteen hundred and fifty dollars, also bearing ten per cent. interest.

It was understood that the two first notes represented the amount to be advanced through the National Bank in Greenville, Miss., at various times, and the remainder was for debts which were paid by Tribbette for account of the Gwins.

Some time during the year 1896 other advances were required, and the following memorandum was presented to H. & C. Newman in order to obtain of them the necessary advances for the Gwins:

Tribbette vs. Gwin et als.

STATEMENT BETWEEN W. H. TRIBBETTE AND S. C. GWIN.

*Gwin Dr. to Tribbette.*

| | |
|---|---:|
| On crops......... . ........................................................................................ ......... | $3,855 00 |
| Interest on land note............................ ........ .. ............... ............... . ..... ....... | 165 00 |
| Miller judgment......... ..... . ....... ... .................. ..................................... ..... | 577 00 |
| Hanover National Bank claim ........ ........ ................. ........... .. ...... ............ | 568 00 |
| Total . ..... ..... ................. ............................. ................. ..... | $5,165 00 |
| Ten per cent. interest ............ .......... ..... .................... ......... ......... ... ............ | 430 00 |
| In two notes ........ ........ ..... ........ ..... ..... ..... ..... ..... ....... ..................... | $5,595 00 |
| Due December 1, 1895 ........................... ........ ............ ..... ......... ................. | 2,797 50 |
| Due January 1, 1896 ............ ..... ............... ..... ..... ......... ..... ................. | 2,797 50 |
| First interest note on land ........ ..... ..... ..... ..... ............ ......... ..... ................. | 1,650 00 |
| Grand total, secured by deed of trust on crops, stock, etc.................. | $7,245 00 |

If H. & C. Newman, or any other merchant, will make advances in order to get the commission for selling crops, Tribbette agrees to prorate on four thousand eight hundred and fifty dollars, any amount they may so advance, not exceeding one-fourth the above amount.

(Signed)                                        W. H. TRIBBETTE.

*Not more than the above amount to be advanced.*

(Signed)                                        W. H. TRIBBETTE.

As explanatory of that statement, the subjoined extract from the deed of trust may be appropriately considered, viz.:

"Whereas, we acknowledge ourselves indebted to *W. H. Tribbette*, in the sum of seven thousand two hundred and forty-five ($7245) dollars, which is evidenced by two promissory notes on this day for the sum of two thousand seven hundred and ninety-two dollars and fifty cents each, one due on the first day of December, 1895, and the other due on the first day of January, 1896, and the third note due on the first day of January, 1898, being for the sum of one thousand six hundred and fifty dollars; said first two notes bearing interest at the rate of ten per cent. per annum, from maturity until paid, and ten per cent. attorney's fees, if said note is placed in the hands of an attorney for collection after default has been made in the payment thereof. The third note being for interest owing by us to *W. H. Tribbette*, as evidenced by a deed of trust, recorded in the office of the chancery clerk of Washington county, in Book K, p. 498, of the land records thereof, to which reference is hereby made. It is further understood that of the amount evidenced by the first two notes herein named, the said *W. H. Tribbette* is to advance us, through the First National Bank of Greenville, Miss., the sum of

three thousand eight hundred and fifty-five dollars, as follows, to-wit:

" Up to April 1, 1895, eight hundred and fifty-five dollars; by May 1, five hundred dollars; by June 1, five hundred dollars; by July 1, five hundred dollars; by August 1, five hundred dollars; by September 1, five hundred dollars; by October 1, five hundred dollars; and the remainder of said loan, as evidenced by said two notes, is to be paid *T. M. Miller;* payment of judgment and costs, five hundred and seventy-seven dollars; Hanover National Bank deed of trust, five hundred and sixty-eight dollars and seventeen cents, which are debts charged against us, and which he releases by said payment."

The proof shows that it was on the faith of the foregoing statement and the trust deed that the garnishees undertook the business of the defendants, and received and made sales for them of the pledged cotton, the proceeds of which are in their hands—less the sums they have expended for the defendant's account.

The testimony of the garnishees is to the effect that the written proposition of the plaintiff was, that they (garnishees) should not advance to the defendants more than one-fourth of four thousand eight hundred and fifty dollars; and that on that basis the plaintiff and the garnishees were to prorate—that is to say, plaintiff was to receive seventy-five per cent. and the garnishees twenty-five per cent.—in case the proceeds of sale were insufficient to pay both of them.

The following is the result of the interrogation of one of the garnishees, viz.:

" Q. Now, this agreement here, a copy of which is attached to the petition—you saw that agreement?

" A. Yes, sir; I saw that agreement.

" Q. So, Tribbette agreed to prorate one-fourth of the proceeds of the cotton?

" A. Up to that time, and he was not to advance any more than the amount stipulated. In other words he was to prorate seventy-five per cent. and we twenty-five per cent.

" Q. Have you paid Tribbette seventy-five per cent.?

" A. More than that. We paid Mr. Tribbette on December 2 two thousand seven hundred and ninety-seven dollars and fifty cents—that is, we put it in his favor. On December 30 (we paid

him) two thousand five hundred and thirty-four dollars and twenty-four cents. On January 20, 1896 (we paid him) one thousand eight hundred and twenty-eight dollars and sixteen cents—making a total of seven thousand one hundred and fifty-seven dollars and two cents.

" Q. And the total cotton brought over thirteen thousand dollars?

" A. I can not tell what the cotton brought; but I will furnish you a statement.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

" Q. The cotton brought thirteen thousand nine hundred and three dollars and forty seven cents?

" A. I suppose that is right; and seven bales besides.

" Q. And the amount paid back?

" A. Was seven thousand one hundred and fifty-seven dollars and two cents.

" Q. And he agreed to prorate?

" A. On one-quarter.

" Q. He agreed not to advance any more than that?

" A. Well, the agreement speaks for itself—yes, sir.

" Q. There was no necessity of prorating, because you have been paid everything?

" A. We have not.

" Q. Twelve hundred and odd dollars?

" A. We have not been paid; they owe us one thousand four hundred and forty-eight dollars and twenty cents.

" Q. You would lose fourteen hundred and odd dollars. Now, have you figured out *how much Tribbette, the plaintiff in this case, would lose for the advances made by him, based upon this agreement?*

" A. *I don't think he would lose anything, because he has got seven thousand one hundred and fifty-seven dollars and two cents, and he did not advance any more than that. And besides he has got two mules and the corn and the cotton seed;* and we virtually paid him back seven thousand one hundred and fifty-seven dollars and two cents. That was all he was to advance.

" Q. He (Tribbette) has advanced, according to this besides the amount mentioned in this agreement—was not this agreement to advance four thousand eight hundred and fifty dollars besides, the amount by which you prorated in the proportion of three-fourths to one-fourth?

16

" A. Seven thousand two hundred and forty-five dollars was all that he was to advance.

" Q. Well, Tribbette was to advance —

" A. *Tribbette was to advance on what he only* claimed a privilege; on four thousand eight hundred and fifty dollars, as against twelve hundred dollars which we were to advance."

This witness states further, that from the proceeds of the cotton, *they honored drafts in favor of Tribbette to the amount of seven thousand one hundred and fifty-seven dollars and two cents,* which leaves the defendants owing them on the 14th of April, 1896, the sum of one thousand four hundred and forty-eight dollars and twenty cents; while the balance due the plaintiff is only eighty-seven dollars and ninety-eight cents.

This witness concludes his testimony thus:

" Q. You made no prorate with Tribbette, why was it?  Was it because you considered (that) having paid him all that was called for by the deed of trust, that there was no reason for a prorate?

" A. *We paid him in full.*  We paid him more than we agreed to prorate."

*Per contra* the plaintiff's statement is, that the note sued on for two thousand seven hundred and ninety-seven dollars and fifty cents has not been paid.

The following interrogation of this witness is worthy of consideration, viz.:

" Q. Have you made any effort (in Mississippi) to collect the amount that is due you?

" A. On the land?

" Q. Yes sir.

" A. Only so far as collecting one thousand six hundred and fifty dollar note.  I took deed of trust instead of selling land.

" Q. You have a deed of trust on the land to secure the balance due you?

" A. Yes, sir; the balance of one thousand six hundred and fifty dollars," etc.

This witness explains the proposition which garnishees based their transactions with the defendants upon thus:

" The nature, terms and conditions of the prorate agreement were, that I was to advance in cash, to make the crop of 1895, three thousand eight hundred and fifty dollars (and) one thousand dollars (was)

to be (advanced) on judgment and deed of trust, against notes held by Hanover National Bank and Miller, making four thousand eight hundred and fifty dollars, which was my limit in the way of advances to make the crop.

" H. & C. Newman (were) limited to one thousand two hundred dollars, making a total of six thousand and fifty dollars. If after paying the expenses of gathering, wrapping, ginning and marketing the crop, there was not enough left to pay the six thousand and fifty dollars, then we (plaintiff and H. & C. Newman) were to prorate on the basis of four thousand eight hundred and fifty dollars for me, and one thousand two hundred dollars for Newman," etc.

But while the plaintiff as a witness insists that the note sued on has never been paid, he does not deny the statement of the garnishees that they paid him in all seven thousand one hundred and fifty-seven dollars and fifty cents.

But, in corroboration of the parol testimony of the garnishees, they produced and filed in evidence exemplifications of their commercial books in response to the request of plaintiff's counsel, and they show the following entries, viz.:

| | |
|---|---|
| 1895, December 2, to W. H. Tribbette | $2,997 50 |
| 1895, December 31, to W. H. Tribbette | 2,531 24 |
| 1896, January 20, to W. H. Tribbette | 1,828 98 |
| Total | $7,157 72 |

The foregoing amounts are almost identical with the items of the statement which constituted the basis of the garnishees' dealings with the defendants, and the dates of the purported payments exactly correspond with the maturities of the aforesaid notes. And the aggregate amount of said payments is identically the same as that given in the testimony of the garnishees.

These exemplifications from the books of the garnishees were not attacked or questioned in any way, notwithstanding plaintiff had the conclusion of the case. Indeed, the garnishee was introduced as a witness on the part of plaintiff; and as he was requested to make and produce same as a part of his answers as a witness, they may be properly treated as his evidence.

In addition to the foregoing observations a casual inspection of the aforesaid statement and the deed of trust disclose that the plaintiff only contracted to furnish the defendants supplies to the amount of three thousand eight hundred and fifty-five dollars, and that the

residue of the sum of five thousand five hundred and ninty-five dollars is made up of interest carried into the calculation as principal and two antecedent debts.

This sum is represented in the transaction by two notes, viz. :

| | |
|---|---:|
| One due December 1. 1895 | $2,797 50 |
| One due January 1, 1896 | 2,797 50 |
| Total | $5,595 00 |

It is plain to be seen, then, that these two notes represented the entire transaction with reference to the crop advances for 1895— including the old debts, which are therein specified as being secured.

But the deed of trust includes and secures the additional sum of one thousand six hundred and fifty dollars, which is represented by a third note; though this debt is an old one, too, as the deed of trust fixes its date as January 1, 1893. The amount of this note, when added to the amount of the other two, as it is in the statement, aggregates the total sum of seven thousand two hundred and forty-five dollars, and the whole is secured by the trust deed; but the proof satisfies our minds that the garnishees have paid the plaintiff the *entire sum*, less a small amount, which is far less than his proportionate share of the loss which he and the garnishees sustained in the crop adventure.

Our conception of the evidence is entirely different from that of our learned brother of this District Court, and we therefore feel constrained to reverse his judgment and render one in favor of the garnishees.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that the demands of the plaintiff in respect to the garnishees be rejected at his cost in both courts—the rights of the defendants, whatever they are, being fully reserved.

## ON APPLICATION FOR A REHEARING.

A re-examination of this case has confirmed our original conclusions, consequently a rehearing is refused.

But counsel for plaintiff has raised an entirely new issue in their application in regard to a certain sum of two thousand five hundred dollars of advances, which they insist has not been accounted for in the settlement.

In our opinion the settlement was complete; but, as the parties

reside in Mississippi, we will leave that matter open to further investigation.

In that respect the plaintiffs' rights are reserved in some appropriate proceedings.

Rehearing refused.